# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 04-CR-32-EA |
| | ) |
| ALLIED CHEMICAL SUPPLY, INC., | ) |
| STEVEN JOHN WORLEY, | ) |
| | ) |
| Defendant. | ) |

**FILED**

APR 1 2004

Phil Lombardi, Clerk
U.S. DISTRICT COURT

## PLEA AGREEMENT

The United States of America and the Defendants, Allied Chemical Supply, Inc. ~~and~~ _through cou_

_Robert Nigh, Jr_

and Steven John Worley, in person and entity and through counsel, Jack E. Gordon, respectfully

inform the Court that they have reached the following plea agreement:

**(A)    DEFENDANTS' OBLIGATIONS**

**(1)    Plea**

The Defendants agree to enter voluntary pleas of guilty to the following:

> **Count 1 - 21 U.S.C. §§ 846 and 841(c)(2)** -  Conspiracy to Possession of List Chemical with Intent to Distribute and Distribution of List Chemical with Knowledge, or having Reasonable Cause to Believe, the Listed Chemical will be Used to Manufacture a Controlled Substance;

> **Count 2 - 18 U.S.C. § 1956(h)** -  Money Laundering Conspiracy

December 12, 2003

Defendant's Initials

as set forth in the Information in cause number 0**4**-CR-**32-EA**, Northern District of Oklahoma, and admit to being in fact guilty as charged in the counts to which Defendants are pleading guilty.

### (2)    <u>Waiver of Constitutional Rights</u>

(a)    The Defendants understand that by pleading guilty, the following constitutional rights will be relinquished: the right to be indicted if proceeding by Information, the right to plead not guilty, the right to be tried by a jury, or if the Defendants wish and with the consent of the Government, to be tried by a judge.  At that trial, the Defendants would have the right to an attorney and if the Defendants could not afford an attorney, the Court would appoint one to represent the Defendants. The Defendants would have the right to assist in the selection of the jury.  During the trial, the Defendants would be presumed innocent and a jury would be instructed that the burden of proof is on the Government to prove the Defendants guilty beyond a reasonable doubt and by a unanimous verdict.  The Defendants would have the right to confront and cross-examine witnesses against the Defendants.  If desired, the Defendant Steven John Worley could testify on His own behalf and Defendants could present witnesses in Defendants' defense.  On the other hand, if the Defendant Steven John Worley did not wish to testify, that fact could not be used against Defendant Steven John Worley and a jury would be so instructed.  If the Defendants were found guilty after a trial, the Defendants would have the right to appeal that verdict to determine if any errors had been committed during trial that would require either a new trial

December 12, 2003

2

Defendant's Initials

or a dismissal of the charges.  By pleading guilty, the Defendants will be giving up all of these rights.  By pleading guilty, the Defendants understand that questions posed to Defendant Steven John Worley and a representative of Allied Chemical Supply, Inc., by the Court both about the rights that the Defendants will be giving up and the factual basis for the Defendants' plea, may have to be answered.  Any statements made by the Defendant Steven John Worley and Allied's representative during such a hearing are not, in any civil or criminal proceeding, admissible against Defendants except as provided in Federal Rules of Criminal Procedure 11(f).

(b)     **Appellate Waiver:**

**The Defendants agree to waive all appellate rights, including any and all collateral attacks including but not limited to those pursued by means of a writ of habeas corpus, save and except claims of ineffective assistance of counsel.**

(c)     **Rule 11 Waiver:**

**The Defendants knowingly and expressly waive all of the rights afforded Defendants pursuant to the provisions of Rule 11(f) of the Federal Rules of Criminal Procedure.  In other words, after entry of a plea made pursuant to this plea agreement, and in consideration thereof, the following shall be admissible against the Defendants:**

**i.     A plea of guilty which is later withdrawn or which the Defendants seeks to withdraw;**

**ii.     Any statement made in the course of any proceeding under Rule 11 regarding said plea of guilty;**

December 12, 2003

3

Defendant's Initials

       iii.    **Any statement made in the course of plea discussions with an attorney or agent for the Government which result in a plea of guilty later withdrawn.**

(d)    <u>**FOIA WAIVER:**</u>

**The Defendants waive all rights, whether asserted directly or by a representative, to request or to receive from any department or agency of the United States any records pertaining to the investigation or prosecution in this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.**

(3)    <u>**Financial Disclosure**</u>. Defendants represent and warrant to the Government that Defendants have no interest, either direct or indirect, whether held in Defendants' names, the name of any family member or relative or in the name of any other person or organization, in any property, real or personal, fraudulently obtained, constituting, derived from or traceable, directly or indirectly, to funds illegally obtained by the Defendants, except as disclosed on the Statements described below and attached to this Agreement.

In support of the foregoing representation, Defendants certify that attached to and made a part of this agreement are true and complete Financial Statement of all Defendants' income and assets, real and personal, held and owned in Defendants' name or in the name of any other person for the benefit of Defendants.

As additional support of the foregoing warranty, Defendant Steven John Worley agrees voluntarily to submit to a polygraph examination concerning Defendants' financial

December 12, 2003

4

Defendant's Initials

disclosures, conducted by a FBI Polygraph Examiner. Defendants understand and acknowledge that the Government is relying upon Defendants' warranty, the attached statements and Defendant Steven John Worley's polygraph examination as inducements to enter into this Agreement. The United States and the Defendants agree that the results of any polygraph examination will not be utilized in any proceeding.

### (4)   **Costs of Prosecution**

The Court can order the Defendants to pay costs of prosecution of this criminal case. The Defendants agrees the Court's consideration of the amount of the costs of prosecution shall **NOT** be limited to the amounts alleged in the counts to which the Defendants are pleading guilty, and may include stipulated amounts the Court may order as costs of prosecution, including, copying of documents, and the undercover purchase money for a total in the amount of $3,900.00. The Defendants further agree that any amount ordered by the Court to be paid as costs of prosecution may not be discharged, in whole or in part, in any bankruptcy proceeding.

### (5)   **Special Assessment**

The Defendants hereby agree to pay the total amount required for the Special Monetary Assessment ($100 per felony count) to the United States District Court Clerk, before the time of the sentencing hearing or as directed by the District Court.

December 12, 2003

5

Defendant's Initials

(6)    **Factual Basis and Elements as to Counts One and Two**

A.    **COUNT ONE:**

The elements that the United States must prove beyond a reasonable doubt in order to convict under Title 21, United States Code, Sections 846 and 841(c)(2), are as follows:

ONE:    To conspire and agree with another to possess with intent to distribute and to distribute a list chemical knowingly, or intentionally, or having reasonable cause to believe, the list chemical will be used to manufacture a controlled substance

TWO:    To . . . . distribute . . . a listed chemical knowing, intending, or having reasonable cause to believe, that the listed chemical will be used to manufacture a controlled substance . . .

THREE:    within the Northern District of Oklahoma.

In regard to the factual basis required by Federal Rule of Criminal Procedure 11(b)(3), Defendants agree and stipulate that there is a factual basis for the plea of guilty and relieve the United States of any further obligation to adduce such evidence.

Steven John Worley and Allied Chemical Supply, Inc., admit knowingly, willfully, and intentionally committing or causing to be committed, the acts constituting the crimes alleged in the Information in Case No. 04-CR-**3Z-EA** , and confess to the Court that Defendants are in fact guilty of such crimes.

December 12, 2003

6

Defendant's Initials

Beginning in or around May 2000, and continuing until May 28, 2003, I Steven John Worley and Allied Chemical Supply, Inc., located at 8141 E. 46th Street, Tulsa, Oklahoma, and within the Northern District of Oklahoma, conspired and agreed with others to possess and distribute listed chemicals from Allied Chemical Supply, Inc., knowing, intending or having a reasonable cause to believe, that the listed chemicals would be used to manufacture controlled substances, specifically methamphetamine. A more detailed description of this crime is outlined below:

We agree that on May 30, 2000, DEA Diversion Investigators Sam Kemp and Joy Sayre entered Allied Chemical Supply, Inc., with the purpose of placing the business on "notice" regarding the sale of Iodine and Methyl Sulfone (MSM). The DEA Diversion Investigators came into contact with me (Steven John Worley) and served me a "blue notice" regarding the trend concerning the illicit use of Iodine in the clandestine production of methamphetamine. I, Steven John Worley, was also provided with a "notice" regarding MSM being utilized as a cutting agent for methamphetamine. I, Steven John Worley, was also provided with the Suspicious Order guidelines, Suspicious Order reporting sheet, and a photostatic copy of 21 CFR § 1310 regarding listed chemicals. I, Steven John Worley acknowledged the report of the Notices and Suspicious Order guidelines. On May 30, 2000, I, Steven John Worley, informed the DEA Diversion Investigators that members of the Oklahoma Bureau of Narcotics and Dangerous Drugs had previously visited Allied Chemical Supply, Inc. and advised me (Steven John Worley) that chemicals from Allied Chemical Supply, Inc. were located at a clandestine lab site. Further, on May 30, 2000, I, Steven John Worley, refused to produce or show the list of Iodine Sales to the DEA Diversion Investigators stating that I wanted to confer with my attorney before releasing any records.

On April 9, 2001, Agent Bryant Knox, of the Oklahoma Bureau of Narcotics and Dangerous Drugs, entered Allied Chemical Supply, Inc. for the purpose of identifying and confirming purchases of Iodine from Allied Chemical Supply, Inc. Agent Knox met with me (Steven John Worley) and inquired about the sale of Iodine and the maintaining of logs and records of the sales. I, Steven John Worley, advised Agent Knox that Allied did maintain records of all Iodine sales and that I, Steven John Worley, would only check those records to confirm a sale if the person in question had been arrested.

During the Fall of 2001, Captain Mike Rake, the Assistant Division Commander of the Tulsa Police Department's Special Investigation Division, contacted me (Steven John Worley) at Allied Chemical Supply, Inc. in an effort to place the business on notice that items sold from Allied Chemical Supply, Inc. were routinely found in methamphetamine labs throughout the City of Tulsa. Captain Rake and I, Steven John Worley, discussed the fact

December 12, 2003

Defendant's Initials

that chemicals from Allied Chemical Supply, Inc. were in fact being received at clandestine methamphetamine labs.

During November 2001, Sgt. Harold Adair and Cpl. Mike Parsons of the Tulsa Police Department, Special Investigations Division and the Organized Crime Drug Enforcement Task Force, entered into Allied Chemical Supply, Inc. and spoke with me. This conversation involved obtaining Material Safety Data Sheet information on chemicals which were commonly found in methamphetamine labs. During this conversation, the topic of Iodine sales and maintaining of records came into question. I, Steven John Worley, advised Sgt. Adair and Cpl. Parsons that Allied Chemical Supply, Inc. maintained a log of all Iodine sales. I, Steven John Worley, further advised these officers that if law enforcement officers wanted to see a copy of the records they would need to obtain a search warrant for the information if the request was not for a specific person or incident.

In October 2002, Ottawa County Deputy Sheriff Scott Graham entered into Allied Chemical Supply, Inc. and made contact with me. Deputy Graham requested to see certain records regarding chemical and equipment sales commonly associated with the clandestine production of methamphetamine. I, Steven John Worley, refused to show or release any records from the business without first having been provided with a subpoena requesting such information. I, Steven John Worley, refused to look at photographs of known methamphetamine cooks which Deputy Graham had with him to see if any of the people had been customers. I, Steven John Worley, advised Deputy Graham that I would not look at the photographs out of a fear of being sued by one of my customers for violating the "privacy act."

On January 16, 2003, after I, Steven John Worley, was given the list of chemicals by individuals wanting to purchase chemicals, I, Steven John Worley, sold the individuals everything needed to manufacture methamphetamine, including: Various flasks, pH papers, gloves, Toluene, (a List II Chemical), Sodium Hydroxide, Phosphorous Acid Flakes, Acetone, (a List II Chemical), Muriatic Acid, Sodium Chloride, Sodium Thiosulfate, and a one gallon hand pump sprayer. These individuals were actually undercover police officers from the Tulsa Police Department, Special Investigations Division.

On January 23, 2003, DEA Diversion Investigator Gary Lawson and Task Force Officer Robert Mieir entered Allied Chemical Supply, Inc. in their professional character as DEA Diversion Investigators, and advised me (Steven John Worley) and my wife, Marjorie Suzanne Worley that numerous items purchased from Allied Chemical Supply, Inc. were being recovered within clandestine drug labs. DEA Diversion Investigator Lawson provided us with a Chemical Handlers Manual and specifically advised us as to what constituted a

December 12, 2003

8

Defendant's Initials

"suspicious transaction." DEA Diversion Investigator Lawson also provided us with four (4) separate notices which included the: Combination Ephedrine Notice, the Iodine Notice, the Suspicious Purchase Indicators Notice and the Red Phosphorous and Hypophosphorous Acid Notice. I, Steven John Worley, again acknowledged the fact that I had received Notices from the DEA regarding the sale of list and non-list chemicals as well as other material and equipment used in the manufacture of methamphetamine.

On March 14, 2003, I, Steven John Worley, sold to the same two individuals (undercover officers) who came in on January 16, 2003, eight (8) ounces of Iodine Crystals, (a List II Chemical), and five (5) gallons of Phosphoric Acid 75%. Further, on March 14, 2003, I, Steven John Worley, possessed a semi-automatic pistol during the transaction wherein I sold eight (8) ounces of Iodine Crystals, (a List II Chemical), and five (5) gallons of Phosphoric Acid 75%.

On April 9, 2003, at approximately 11:05 a.m., the same two individuals (undercover officers) entered Allied Chemical Supply, Inc. and approached me (Steven John Worley). One of the individuals produced two (2) driver's licenses, both containing the identical photograph with different names. The individual inquired which license was last used to make an Iodine purchase and I, Steven John Worley, looked at the licenses, checked my log book, and told the individual which license had been used last. I, Steven John Worley, then asked the individual how he had obtained two licenses with the same photo and the individual told me not to ask too many questions. I, Steven John Worley, then proceeded to sell the individual eight (8) ounces of Iodine Crystals, (a List II Chemical).

On April 9, 2003, at approximately 11:38 a.m., the same two individuals (undercover officers), re-entered Allied Chemical Supply, Inc. and approached me (Steven John Worley). The same individual who had previously purchased the Iodine Crystals approximately twenty minutes earlier displayed the other driver's license and purchased another eight (8) ounces of Iodine Crystals (a List II Chemical) from me (Steven John Worley). Subsequently, the other individual ordered eight (8) ounces of Iodine Crystals from me (Steven John Worley), which were paid for by the first individual, thus, I, Steven John Worley, sold a total of one and a half 1 ½ pounds of Iodine Crystals, (a List II Chemical) from Allied Chemical Supply, Inc. to an individual on the same day, within approximately 20 to 30 minutes.

On April 10, 2003, the same two individuals (undercover officers) entered Allied Chemical Supply, Inc. and approached me (Steven John Worley). I, Steven John Worley, advised the individuals that I had "messed up" and the sales the previous day had been "suspicious." I, Steven John Worley, advised the individuals that they would have to wait to come back when I would not recognize them. I, Steven John Worley, stated: "When I

December 12, 2003

Defendant's Initials

don't know . . . that's how it works." I, Steven John Worley, then proceeded to sell the individuals: Flasks, Denature Alcohol, Potassium Iodide, Sodium Hydroxide, Sodium Chloride, one (1) gallon of Phosphoric Acid 75% and one (1) gallon of Toluene, (a List II Chemical). Further, on April 10, 2003, I, Steven John Worley, possessed a semi-automatic pistol during the transaction wherein I sold the: flasks, Denatured Alcohol, Potassium Iodide, Sodium Hydroxide, Sodium Chloride, One (1) gallon of Phosphoric Acid 75% (a List II Chemical) to the same aforementioned individuals.

On April 23, 2003, the same two individuals (undercover officers) entered Allied Chemical Supply, Inc. and met with me (Steven John Worley). One of the individuals ordered all of the Toluene that Allied Chemical Supply, Inc. had on hand. Subsequently, I, Steven John Worley, sold the individual twenty-seven (27) gallons of Toluene (a List II Chemical), five (5) gallons of Phosphoric Acid 75%, fifty (50) pounds of Sodium Chloride and one (1) pound of Potassium Iodide. I, Steven John Worley, helped the individual load the 55-gallon drum, which contained the 27 gallons of Toluene, into his pickup truck. While in the process of loading the drum, I, Steven John Worley, peeled the label off the top of the drum, which indicated that the drum, (and the Toluene contained therein), had come from Allied Chemical Supply, Inc.

On April 23, 2003, another individual (undercover officer) entered Allied Chemical Supply, Inc. and met with me (Steven John Worley). That individual then produced a driver's license that had previously been shown to me (Steven John Worley) earlier on April 23, 2002, by another individual (undercover officer), and purchased eight (8) ounces of Iodine Crystals, (a List II Chemical) from me.

During all of the above-mentioned encounters with Allied Chemical Supply, Inc., I, Steven John Worley, required cash in order for the individuals to purchase the chemicals, glassware, equipment, and materials.

From in or about January 2001, through May 28, 2003, **ALLIED CHEMICAL SUPPLY, INC.**, I, Steven John Worley, and my wife, Marjorie Suzanne Worley, sold Iodine Crystals, a List II Chemical, to individuals in quantities in excess of the 0.4 kilogram threshold amount, over six hundred seventy three (673) times. Each of these sales in excess of the threshold 0.4 kilogram quantity by **ALLIED CHEMICAL SUPPLY, INC.**, myself, Steven John Worley, and Marjorie Suzanne Worley, is alleged to be a violation of 21 Code of Federal Regulation Part 1310, and federal law.

I, Steven John Worley, know and knew that selling list II chemicals with the knowledge or reasonable cause to believe that the chemicals would be used to manufacture

December 12, 2003

10

Defendant's Initials

controlled substances is against the law, and a violation of Title 21, United States Code, Sections 846 and 841(c)(2). I, Steven John Worley, know and knew that iodine crystals are a necessary and primary ingredient in the clandestine manufacture of methamphetamine. I, Steven John Worley, knew, and had reasonable cause to believe, that the Iodine chemicals and glassware I sold would be used illegally to manufacture controlled substances, specifically, methamphetamine.

### B.   COUNT TWO:

The elements that the United States must prove beyond a reasonable doubt in order to convict under Title 18, United States Code, Sections 1956(h) and 1956(a)(1)(A)(i), are as follows:

ONE:        Whoever, conspires to commit a 1956 or 1957 offense

TWO:        Knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity;

THREE:      With the intent to promote the carrying on of specified lawful activity;

FOUR:       Within the Northern District of Oklahoma.

I, Steven John Worley, Allied Chemical Supply, Inc., and Marjorie Suzanne Worley, admit that between December 4, 2000 and March 26, 2003, in the Northern District of Oklahoma, purchased iodine crystals, a list II chemical, with the intent to possess and distribute the listed chemicals from Allied Chemical Supply, Inc., knowing, or having reasonable cause to believe, that the listed chemical would be used to manufacture a controlled substance, a violation of Title 21, United States Code, Section 841(c)(2).

I, Steven John Worley, purchased these listed chemicals while operating the corporation ALLIED CHEMICAL SUPPLY, INC. of which I own 49%.

December 12, 2003

11

Defendant's Initials

I, Steven John Worley, deposited the proceeds or directed the proceeds to be deposited into bank accounts under the name of ALLIED CHEMICAL SUPPLY, INC., from the illegal sales of listed chemicals. Specifically, Account #0700008805 and #0700006692, Community Bank and Trust, 8141 E. 46th Street, Tulsa, Oklahoma, and within the Northern District of Oklahoma.

From December 4, 2000 to March 26, 2003, I, Steven John Worley, continued to purchase iodine crystals with proceeds from prior illegal sales of listed chemicals.

_____          12/12/03
STEVEN JOHN WORLEY, Defendant            Date

                                          4/1/04

_____          12/12/03
STEVEN JOHN WORLEY,                       Date
Vice-President of Defendant
ALLIED CHEMICAL SUPPLY, INC.

**(6)   Cooperation**

    **(a)   Full Cooperation**

The Defendant Steven John Worley agrees to cooperate fully with the United States

Government and all of its various departments and agencies on the continuing investigation

into the Defendants' alleged criminal conduct.  More particularly, Defendants agrees to

complete disclosure of all information he has, has access to, or which becomes available to

him, and agrees to provide complete assistance and truthful testimony in any and all matters

of alleged criminal conduct which arise out of this investigation.  Defendants hereby agrees

to cooperate fully with inquiries, whether criminal or civil in nature, made by or on behalf

December 12, 2003

Defendant's Initials

of any federal law enforcement or regulatory agency, department or board.   In this connection, the Defendant Steven John Worley agrees to make himself available to federal authorities for interviews as and when reasonably requested by them. Defendant Steven John Worley shall cooperate, providing truthful, complete, and forthright information whenever, wherever, to whomever, and in whatever form an attorney or investigator from the Government requests.   The term "whatever form" includes, but is not limited to, oral responses to questions; sworn written statements; interrogatories; sworn testimony before a Grand Jury; sworn testimony in court; and documentary materials.  The term "whomever" includes, federal law enforcement agencies, the United States District Court, and any duly empaneled federal grand juries. Defendant Steven John Worley agrees to undergo complete debriefing,  and further agrees to undergo a complete polygraph examination into all of the Defendant's criminal activities, conducted by a Federal Bureau of Investigation Polygrapher at the unilateral option of the Government.

### (b)   <u>Cooperation Defined</u>

The Government defines "cooperation" to require complete, candid, and absolutely truthful disclosures by Defendant Steven John Worley in response to any and all questions or inquiries that may be put to him in connection with such interviews with law enforcement personnel, before any grand jury, or at any trial or related hearing.  Full cooperation also includes following the directions of law enforcement officers in pursuing and gathering evidence in investigations of such alleged criminal conduct in connection with which the

December 12, 2003

13

Defendant's Initials

Defendant Steven John Worley is assisting, and not doing anything to compromise such investigation. It is further acknowledged that the Government, acting in good faith, has the sole unilateral discretion to determine whether the Defendant Steven John Worley is providing "cooperation" as defined above. The Defendant Steven John Worley further agrees to tender forthwith any and all records which he has, or to which he has access, which have a bearing upon his criminal activity.

**(c)     Substantial Assistance**

If and when the assistance described in the preceding paragraphs has been completed, the United States acting in good faith in it sole discretion shall determine whether the Defendant Steven John Worley's assistance has been substantial. The United States is under no obligation to investigate and act upon information provided by Defendant Steven John Worley. However, if the United States in fact derives substantial assistance as a result of information provided, the United States will so advise the Court. Upon a determination that the Defendant Steven John Worley has rendered substantial assistance, the United States may move for a downward departure pursuant to § 5K1.1 of the <u>Sentencing Guidelines</u> or pursuant to Federal Rule of Criminal Procedure 35(b), as appropriate; provided, however, regardless of the nature and extent of any assistance given hereunder, the United States shall have no obligation to move for a downward departure if the Defendant Steven John Worley also knowingly furnishes information that is materially false, or acts in a manner that neutralizes his availability to be called as a truthful witness by the United States. Any good

December 12, 2003

14

Defendant's Initials

faith determination by the United States that the Defendant Steven John Worley has failed to provide substantial assistance, has knowingly provided materially false information or has neutralized his availability to be called as a witness is within the sole discretion of the United States. If the United States moves for a downward departure, whether to depart and the extent of any such departure shall be within the discretion of the Court.

**(d)     Forfeiture**

As part of their agreement to cooperate, Defendants Steven John Worley and Allied Chemical Supply, Inc., agree to the criminal forfeiture and otherwise waive and abandon any ownership rights they possess in all items listed below:

    1)    Defendants Steven John Worley and Allied Chemical Supply, Inc., agree and stipulate to the criminal forfeiture of Allied Chemical Supply, Inc., including all business assets, as set forth in the Information by Co-Defendants Allied Chemical Supply, Inc. and Steven John Worley;

    2)    Defendants Steven John Worley and Allied Chemical Supply, Inc., agree and stipulate to the criminal forfeiture money judgment in the amount of $250,000; and

    3)    Defendants Steven John Worley and Allied Chemical Supply, Inc., agree and stipulate to the criminal forfeiture of the:  (a) Proceeds of Community Bank & Trust Account #0708501199

December 12, 2003

Defendant's Initials

in the amount of $69,013.78; (b) Proceeds of Bank of Oklahoma Certificate of Deposit #918-0001764 in the amount of $20,045.23, and (c) Proceeds of Bank of Oklahoma Certificate of Deposit #918-0001765 in the amount of $20,045.23.

4)  Defendants Steven John Worley and Allied Chemical Supply, Inc., agree to execute a Stipulation and Consent to Criminal Forfeiture and/or abandonment of the above assets and to execute all deeds and other documents necessary to pass title and ownership to the United States including execution of a Corporate Resolution for the forfeiture of the Allied business and its assets.

(e)  **Seized Evidence**

Defendants further agree that the Court has jurisdiction over the disposition of seized evidence and may order the investigative agency to dispose of the evidence in such manner as provided by said agency's regulations

The Defendants waive all rights, whether asserted directly or by a representative, to request or to receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

December 12, 2003

Defendant's Initials

(f)     **Stipulation of Enjoinment from Listed Chemical Transactions**

Pursuant to Title 21, United States Code, Section 843(e), the Defendants agree to be enjoined from engaging in any transaction involving a list chemical for ten (10) years.

## B)    THE GOVERNMENT'S OBLIGATIONS

Only if the Defendants fully satisfy all obligations outlined in this pleading, the Government agrees:

### (1)    Further Prosecution

It shall not initiate additional criminal charges or affirmative civil enforcement against the Defendants in the Northern District of Oklahoma that, as of the date of the Defendants' acceptance of this agreement, are known to the Government and arise from its investigation of the Defendants' actions and conduct giving rise to the instant Information, save and except criminal acts involving violations investigated by the United States Internal Revenue Service. The Defendants understand, however, that this obligation is subject to all "Limitations" set forth below and that this Office is free to prosecute the Defendants for any illegal conduct (*i.e.*, violation of federal criminal laws) not discovered by or revealed to the Government during its investigation or occurring after the date of this agreement.

December 12, 2003

Defendant's Initials

(C)   **SENTENCE**

    (1)   **Statutory Penalties as to Counts One and Two**

        a.   **COUNT ONE:**

Defendant Steven John Worley acknowledges that the maximum statutory sentence under Title 21, United States Code, Sections 846 and 841(c)(2) is not more than ten years imprisonment and/or $250,000 fine.

Additionally, Defendant Steven John Worley is aware, if imprisonment is imposed, that the Court may include as part of the sentence a requirement that the Defendant be placed on a term of supervised release after imprisonment, not to exceed three (3) years.

        b.   **COUNT TWO:**

The Defendants acknowledge that the maximum statutory sentence under Title 18, United States Code, Sections 1956(h) and 1956(a)(1)(A)(i) is not more than twenty years imprisonment and/or a fine not more than $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer, whichever is greater.

Additionally, Defendant Steven John Worley is aware, if imprisonment is imposed, that the Court may include as part of the sentence a requirement that the Defendants be placed on a term of supervised release after imprisonment, not to exceed three (3) years.

If the term of supervised release for any count of conviction is revoked, the Defendants may be imprisoned for an additional term not to exceed the term of imprisonment

December 12, 2003

18

Defendant's Initials

authorized in Title 18, United States Code, Section 3583(e)(3) for the offense of conviction, with no credit being given for any time served while on supervised release. Further, if the crime of conviction occurred after September 13, 1994, the Court may impose another term of supervised release following any term of imprisonment imposed for a violation of supervised release conditions, and this term of supervised release may not exceed the term of supervised release originally authorized by statute for the offense of conviction less any term of imprisonment that was imposed upon revocation of supervised release. (18 U.S.C. §3583(e) and (h)). If a second or subsequent term of supervised release is revoked, the Court may impose another term of imprisonment not to exceed the difference between any imprisonment imposed for a prior revocation of supervised release for the offense of conviction and the term of imprisonment authorized pursuant to Title 18, United States Code, Section 3583(e)(3). Accordingly, the original term of imprisonment when combined with any term of imprisonment arising from revocations of supervised release, may result in a total amount of imprisonment greater than the statutory maximum term for the offense of conviction.

**(2)    Guidelines**

The Defendants are aware that the sentence to be imposed shall be in conformity with the Sentencing Guidelines promulgated pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §3551 through §3742, and 28 U.S.C. §991 through §998, and that a sentence imposed under the Guidelines is without parole. The Defendants are further aware that the

December 12, 2003

19

Defendant's Initials

sentence has not yet been determined by the Court, that any estimate of the likely sentence received from any source is a prediction, not a promise, and that the Court has the final discretion to impose any sentence up to the statutory maximum. The Defendants further understand that all recommendations or requests by the United States pursuant to this agreement are not binding upon the Court (Sentencing Guidelines §6B1.4(d)). The Court will impose a sentence within the appropriate guideline range, unless the Court finds there is a basis for departure because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.

If the sentencing court should impose any sentence up to the maximum established by statute, the Defendants cannot, for that reason alone, withdraw Defendants's guilty plea, but will remain bound to fulfill all of Defendants' obligations under this agreement.

Nothing in the plea agreement, save and except any stipulations contained herein, limits the right of the United States to present to the Court or Probation Office, either orally or in writing, any and all facts and arguments relevant to the Defendants' sentence and the Defendants' criminal history category, that are available to the United States at the time of sentencing. The United States reserves its full opportunity to speak pursuant to Rule 32(a)(4)(A)(iii) of the Federal Rules of Criminal Procedure.

THE DEFENDANTS FURTHER UNDERSTAND THAT THE SENTENCE TO BE IMPOSED UPON THE DEFENDANTS WILL BE DETERMINED SOLELY BY THE

December 12, 2003

20

Defendant's Initials

SENTENCING JUDGE. THE UNITED STATES CANNOT AND DOES NOT MAKE ANY PROMISE OR REPRESENTATION AS TO WHAT SENTENCES THE DEFENDANTS WILL RECEIVE.

 **(3)** <u>**Stipulations**</u>

 Pursuant to Sentencing Guidelines §6B1.4, the Defendants and the United States agree and stipulate as follows:

 1) The Defendants and the Government herein agree and stipulate that the provisions of the United States Sentencing Guidelines U.S.S.G. § 2D1.1(b) Specific Offense Characteristic, applies to the facts of this case, as the Defendants, Steven John Worley, possessed a semi-automatic pistol during various transactions, wherein he illegally sold listed chemicals, knowing, or having reasonable cause to believe the listed chemicals would be used to manufacture a controlled substance, specifically, methamphetamine;

 2) The Defendants agree to the forfeiture of all interests they have in Allied Chemical Supply, Inc.;

 3) Provided the Defendants clearly demonstrate acceptance of responsibility, the United States agrees to recommend a two-level reduction in offense level pursuant to U.S.S.G. §3E1.1. The United States agrees to file a motion recommending that the Defendants receive an additional one-level reduction pursuant to U.S.S.G. §3E1.1(b). The sentencing judge is in a unique position to evaluate the acceptance of responsibility and his

December 12, 2003

Defendant's Initials

determination will provide the final approval or disapproval of any Section 3E1.1 point level reduction for timely acceptance of responsibility.

Pursuant to Sentencing Guidelines §6B1.4(d), it is understood that neither the Court nor the United States Probation Office is bound by the foregoing stipulations, either as to questions of fact or as to determination of the correct sentencing guidelines to apply to the facts.

Having been fully apprized by defense counsel of Defendants' right to seek compensation pursuant to Public Law 105-119, the Defendants **WAIVE** any and all such right, and stipulates that Defendants are not "prevailing parties" in connection with this case.

### (D)    LIMITATIONS

This Plea Agreement shall be binding and enforceable upon the Office of the United States Attorney for the Northern District of Oklahoma, but in no way limits, binds or otherwise affects the rights, powers, duties or obligations of any state or local law enforcement agency, administrative or regulatory authorities, civil or administrative enforcement, (with the exception of affirmative civil enforcement penalties) collection, bankruptcy, adversary proceedings or suits which have been or may be filed by any governmental entity, including without limitation, the Internal Revenue Service, the Tax Division of the Department of Justice, and the trustee in bankruptcy.

December 12, 2003

22

Defendant's Initials

**(E)   BREACH OF AGREEMENT**

In the event any party believes another has failed to fulfill any obligations under this agreement, then the complaining party shall, in its discretion, have the option of petitioning the Court to be relieved of its obligations herein.   Whether or not a party has completely fulfilled all of its obligations under this agreement shall be determined by the Court in an appropriate proceeding at which any disclosures and documents provided by either party shall be admissible and at which the complaining party shall be required to establish any breach by a preponderance of the evidence. The Defendants hereby **WAIVE** any right under Rule 11(d) and (e) of the  Federal Rules of Criminal Procedure to withdraw from Defendants' pleas and this agreement, save and except under circumstances where the court rejects the plea agreement under Rule 11(c)(5) and except for the limited reasons outlined above in this paragraph.

In the event that Steven John Worley or Allied Chemical Supply, Inc., after entry of a plea of guilty, unsuccessfully attempts to withdraw Defendants's plea of guilty, the United States may continue to enforce the agreement but will no longer be bound by any provision in this agreement regarding acceptance of responsibility, or a substantial assistance Section 5K1.1 motion, if such provisions are included herein.  This provision will not have any continued vitality if it is determined by the Court that the United States acted in bad faith to bring about the attempted withdrawal of plea.

December 12, 2003

23

Defendant's Initials

**(F)**   **CONCLUSION**

No agreements, representations, or understandings have been made between the parties in this case, other than those which are explicitly set forth in this Plea Agreement and none will be entered into unless executed in writing and signed by all of the parties.

SO AGREED:

DAVID E. O'MEILIA
UNITED STATES ATTORNEY


ROBERT T. RALEY
Assistant United States Attorney

DATED _12 DEC. 03_


JACK E. GORDON
Attorney for Defendants

DATED _12 . 12 - 03_


STEVEN JOHN WORLEY
Defendant

DATED _12/12/03_

ALLIED CHEMICAL by Narinder Devon,
President

DATED   4-01-04


ALLIED CHEMICAL SUPPLY, INC.
Defendant
by: Steven John Worley, Vice-President

DATED _12/12/03_

Robert Nigh, Jr. Attorney For ALLIED
December 12, 2003

DATED 4-01-04


Defendant's Initials

24

I have read this agreement and carefully reviewed every part of it with my attorney.

I understand it, and I voluntarily agree to it.  Further, I have consulted with my attorney and

fully understand my rights with respect to the provisions of the Sentencing Guidelines which

may apply to my case.  No other promises or inducements have been made to me, other than

those contained in this pleading.  In addition, no one has threatened or forced me in any way

to enter into this agreement.  Finally, I am satisfied with the representation of my attorney

in this matter.

_____          DATED _12/12/03_
STEVEN JOHN WORLEY                                      _4/1/04_
Defendant,

_____
Marinder P Deven                                               4-1-04
NARINDER OBTAN, PRES. ALLIED CHEMICAL Supply INC.

_____          DATED _12/12/03_
ALLIED CHEMICAL SUPPLY, INC.
Defendant,
by Steven John Worley, Vice-President

_____          4/1/04

Robert Nigh, Jr                                                  4-01-04
Attorney for ALLIED CHEMICAL, INC

December 12, 2003

25

Defendant's Initials

I am attorney for Steven John Worley and ~~Allied~~

~~Chemical Supply, Inc.~~, and I have carefully reviewed every part of this agreement with my

clients. Further, I have reviewed with my clients the provisions of the Sentencing Guidelines

which may apply in this case.  To my knowledge, my clients' decisions to enter into this

agreement is an informed and voluntary one.

JACK E. GORDON
Counsel for Defendants

DATED 12.12.03

4.1.04

4-01-04

Robert Nigh, Jr
Attorney for ALLIED CHEMICAL, INC

D:\allied-steve worley plea.wpd

December 12, 2003

26

Defendant's Initials